UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DENYONNA N. REED | § | CIVIL ACTION |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | COMPLAINT 5:22-cv-00068 |
| | § | |
| I.Q. DATA INTERNATIONAL, INC. | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT I.Q. DATA INTERNATIONAL, INC.'S REPLY TO PLAINTIFF'S RESPONSE TO IQ DATA'S MOTION FOR SUMMARY JUDGMENT UNDER ARTICLE III STANDING**

Defendant IQ Data International, Inc. ("Defendant" or "IQ Data") files this Reply to Plaintiff's Response to IQ Data's Motion for Summary Judgment under Article III Standing ("Reply") and would respectfully show the Court as follows:

**SUMMARY OF ARGUMENT**

Plaintiff's Response to IQ Data's Motion for Summary Judgment under Article III Standing ("Response") contends that the evidence in this case demonstrates that she sustained a concrete injury sufficient to confer Article III's standing requirement.[1] Specifically, Plaintiff contends that she suffered a concrete injury because (1) she mailed dispute letters; (2) her credit score was adversely impacted; (3) she was denied housing which forced her to stay at her current apartment on a month-to-month basis causing her rent to increase by $300 per month; and (4) her existing mental health issues were aggravated for which she sought treatment.[2]

---

[1] *See* Dkt. 32.
[2] *Id.*

The "evidence" referenced above is not sufficient to confer Article III standing as it fails to establish that Plaintiff suffered any concrete injury as a result of IQ Data's alleged conduct. Importantly, the majority of the injuries alleged in Plaintiff's Response did not even exist at the time Plaintiff filed suit, thereby negating her standing in this matter, which explains Plaintiff's failure to allege the injuries referenced in Plaintiff's Response in her Complaint. As explained below, Plaintiff lacks standing in this matter because there is no causal connection between the injuries Plaintiff alleges and IQ Data's conduct. Accordingly, IQ Data is entitled to summary judgment.

## ARGUMENTS & AUTHORITIES

Plaintiff has failed to establish that she suffered any concrete injury as a result of IQ Data's conduct. In order to satisfy Article III standing, Plaintiff is required to "show (i) that [she] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."[3] "The second element of Article III standing—traceability—requires there be a 'causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'"[4] Moreover, standing must be met at all stages of litigation, including the time Plaintiff files suit as well as on appeal.[5] "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)."[6]

---

[3] *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021); *see also Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 821 (5th Cir. 2022).
[4] *Kranz v. Midland Credit Mgmt., Inc.*, No. SA-18-CV-169-XR, 2020 WL 3899223, at *7 (W.D. Tex. July 10, 2020) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992)).
[5] *Hollingsworth v. Perry*, 570 U.S. 693, 705, (2013).
[6] *See TransUnion*, 141 S. Ct. at 2208.

The Fifth Circuit Court of Appeals recently decided *Perez v. McCreary, Veselka, Bragg & Allen, P.C.* which clarified multiple ambiguities regarding Article III standing for alleged FDCPA violations.[7] The Court of Appeals held that (1) an alleged violation of debtor's statutory rights under FDCPA was not a concrete injury; (2) *an alleged risk of financial harm was not concrete injury*; (3) confusion resulting from the receipt of letter was not concrete injury; (4) *lost time and/or time wasted was not a concrete injury*; (5) receipt of unwanted debt collection letters is not a concrete injury; and (6) a debtor does not have standing to bring action seeking injunctive or declaratory relief if she fails to allege that she is *currently* subject to a material risk of financial harm.[8]

**A.   Plaintiff has failed to establish that she suffered a concrete injury sufficient to confer Article III standing by mailing dispute letters to the credit bureaus.**

Plaintiff's Response contends that she sustained a concrete injury by mailing dispute letters to TransUnion, Equifax, and Experian.[9] Plaintiff also improperly asserts that courts "have consistently held" that mailing credit reporting dispute letters is a concrete injury that confers Article III standing."[10] In fact, courts in the Fifth Circuit have held to the contrary. For example, in *Collier v. Smith, Rouchon & Assocs., Inc.*, the plaintiff alleged that the defendant debt collector failed to mark her debt as disputed after plaintiff had *mailed a dispute letter*.[11] Nevertheless, the Court found that the plaintiff lacked Article III standing to bring an FDCPA claim.[12] Additionally, any lost time and/or time wasted that Plaintiff spent mailing these letters is also insufficient to

---

[7] *Perez*, 45 F.4th 816.
[8] *Id.*
[9] Dkt. at p. 3.
[10] *Id.*
[11] *Collier v. Smith, Rouchon & Assocs., Inc.*, No. 1:20-CV-61-LG-RPM, 2021 WL 969184, at *1 (S.D. Miss. Mar. 15, 2021)
[12] *Id.* at 5.

establish a concrete injury.[13] Accordingly, Plaintiff did not satisfy Article III's standing requirement by mailing the dispute letters.

It should also be noted that Plaintiff's dispute letters were mailed twenty (20) days *after* Plaintiff filed this lawsuit. Plaintiff filed suit on January 26, 2022.[14] And while the dispute letters are dated January 17, 2022, a closer a look at the Certified Mail Receipt ("CMR") submitted by Plaintiff shows that the letters were not actually mailed until February 15, 2022.[15] Why these letters are inaccurately dated as if they were sent out prior to Plaintiff filing suit is unknown. Moreover, Plaintiff's Complaint does not allege that she mailed any dispute letters or that she suffered any injury from doing so. Nevertheless, Plaintiff's contention that these letters establish a concrete injury sufficient to confer standing ignores the fact that standing must be met at all stages of litigation including the time the lawsuit is filed.[16] Since these letters were not a concrete injury at the time Plaintiff filed suit, the letters are insufficient to confer Article III standing in this case.

**B.      Plaintiff has failed to establish that she suffered an injury sufficient to confer Article III standing by having a temporarily altered credit score.**

Plaintiff's Response asserts that IQ Data's inaccurate reporting confers Article III standing solely because her credit score was impacted.[17] Plaintiff further contends that the debt IQ Data reported was for a collection account and that "[i]t is common knowledge that (1) collection accounts are more adverse to one's credit score than a traditional debt such as a credit card account with a balance; and (2) collection accounts on credit reports reduce a consumer's credit score."[18] However, Plaintiff's argument ignores the fact that a person's credit score is not harmed by an

---

[13] *See e.g.*, *Perez* 45 F.4th at 825 (holding that wasted time was insufficient to confer Article III standing).
[14] Dkt. 1.
[15] *See* **Exhibit A**.
[16] *See Hollingsworth*, 570 U.S. at 705.
[17] Dkt. 32 at p. 4.
[18] *Id.*

actively disputed debt.[19] Moreover, "not all [credit reporting] inaccuracies cause harm or present a material risk of harm."[20] Additionally, even if the inaccurate reporting subjected Plaintiff to a risk of financial harm, an "alleged risk of financial harm" is not a concrete injury sufficient to confer Article III standing.[21]

Here, the facts show that the debt was reported on Plaintiff's credit report on December 21, 2021, and the debt was immediately marked as disputed on December 23, 2023 upon Plaintiff's verbal dispute. Aside from Plaintiff's conclusory and contradictory deposition testimony, which is discussed in the following sections, Plaintiff has failed to produce any evidence showing how the inaccurate reporting, which was marked as disputed two days after it was reported, impacted her credit score or otherwise caused her to suffer a concrete injury.

C.   **Plaintiff has failed to establish how any injury that she may have sustained from being denied housing and staying at her current apartment on a month-to-month basis was likely caused by IQ Data.**

Plaintiff argues in her Response that IQ Data is not entitled to summary judgment because she was "denied housing twice" for which she "lost $200 in application fees", and that this forced her to "stay at her current apartment on a month-to-month basis" causing her to pay an additional $300 per month in rent.[22] As an initial matter, these allegations were not alleged in Plaintiff's Complaint nor her written discovery responses. Plaintiff's Complaint only asserts that the debt at issue caused Plaintiff "much distress" and that it "damages her good reputation as a consumer."[23] When Plaintiff was asked to describe her damages in written discovery, Plaintiff was silent as to any allegations that she was denied housing and was forced to stay at her current apartment on a

---

[19] Ulzheimer, J. (2022, May 31). *Does Disputing a Credit Report Hurt Your Credit Score?* Intuit. Retrieved January 11, 2023, from https://mint.intuit.com/blog/credit/what-happens-to-your-credit-score-when-you-dispute-items-on-your-credit-report-0513/
[20] *Collier*, No. 1:20-CV-61-LG-RPM, 2021 WL 969184, at *3.
[21] *Perez*, 45 F.4th at 824.
[22] Dkt. 32 at p. 5.
[23] Dkt. 1 at ¶ 20.

month-to-month basis.[24] Additionally, IQ Data specifically requested that Plaintiff produce documents supporting her claim for actual damages, including her out-of-pocket damages.[25] Notably, Plaintiff did not produce (1) any of the housing applications which she claims to have submitted; (2) any receipts or billing statements showing that she actually paid $200 in application fees; or (3) her lease agreement showing that she is living on a month-to-month basis for which she is paying an additional $300 in rent. Plaintiff's failure to allege these damage in her Complaint and failure to produce any documents substantiating same in response to a valid request for documents related to her alleged actual damages, including her out-of-pocket damages, renders her deposition testimony wholly unreliable.

      Plaintiff's allegation that she was denied housing, which forced her to stay at her apartment on a month-to-month basis, is solely based on her conclusory deposition testimony. Plaintiff gave her deposition on October 21, 2022, yet she never sought to file an amended complaint or supplemented her discovery responses to include documentation of these newly alleged damages, even after IQ Data filed a motion for summary judgment on the basis that Plaintiff failed to establish any concrete injury. Rule 26(e)(1) of the Federal Rules of Civil Procedure strictly requires Plaintiff to supplement her incomplete discovery responses. As a result of Plaintiff's failure to supplement discovery as required by Rule 26(e)(1), Plaintiff's unsupported testimony relating to her allegation—that she was denied housing which forced to stay at her current apartment on a month-to-month basis—should be struck and given no weight, pursuant to Rule 37 of the Federal Rules of Civil Procedure.

      In addition to failing to plead any cognizable damage allegations in the Complaint, claim such damages in her written discovery responses, or provide any documentary support for her

---

[24] *See* Plaintiff's Discovery Responses, attached to Dkt. 25 as Exhibit A, at ROG. No. 9.
[25] *Id.* at RFP Nos. 5 and 9.

claimed damages, Plaintiff has also failed to establish a causal connection between her newly claimed "injury" and IQ Data's conduct. Simply put, the evidence demonstrates that there is no "causal connection between the injury and the conduct complained of."[26] First, the debt at issue was marked as "disputed" in less than 48 hours after it was reported. Second, Plaintiff admitted that she had other debts on her credit report during the time period she claims she was attempting to move.[27] Third, Plaintiff testified that she had been paying rent on a month-to-month basis since April of 2021, and that her rent increased again in November/December of 2021, as a consequence of a new property management company taking over management of Plaintiff's complex.[28] Fourth, Plaintiff admitted that she is still residing at the same complex and that she is still paying an increased rent on a month-to-month basis despite the fact that the debt was removed from her credit report over six months ago.[29] This evidence is insufficient to confer Article III standing which requires that the injury complained of "to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court."[30] Not only does the evidence show establish that Plaintiff's allegations are not linked to any of IQ Data's conduct, but the evidence suggests that Plaintiff would be in the exact same position today had this incident never occurred.

Accordingly, Plaintiff has failed to establish that she suffered any concrete injury as it relates to her allegation that she was denied housing and forced to stay at her apartment on a month-to-month basis.

---

[26] *Kranz*, No. SA-18-CV-169-XR, 2020 WL 3899223, at *7 (citing Lujan, 504 U.S. at 560).
[27] *See* Plaintiff's Deposition Testimony, attached to Dkt. 25 as Exhibit C, at 11:10-19, 12:22-23, 29:04-06.
[28] *Id.* at 25:02-26:01.
[29] *Id.* at 47:21-48:01.
[30] *Kranz*, No. SA-18-CV-169-XR, 2020 WL 3899223, at *7 (citing Lujan, 504 U.S. at 560).

D. **Plaintiff has failed to establish how any concrete injury she sustained as a result of IQ Data's conduct caused her to seek medical treatment.**

Plaintiff argues in her Response that IQ Data is not entitled to summary judgment because Plaintiff testified the inaccurate credit reporting "aggravated her existing mental health issues which she ultimately sought treatment for."[31] Again, this testimony is entirely inconsistent with Plaintiff's written discovery responses. Plaintiff was specifically asked in written discovery if she had seen a healthcare provider as a result of IQ Data's conduct to which she responded, "[a]t this time, Plaintiff has not seen a healthcare provider due to the anguish and distress caused by Defendant."[32] Notably, Plaintiff served her written discovery responses on September 28, 2022, and she was deposed twenty-three (23) days later on October 21, 2022, where she then claimed that she had sought medical treatment from June through August of 2022 due to the inaccurate credit reporting.[33] When IQ Data questioned Plaintiff as to the inconsistency between her testimony and discovery responses, she attempted to clarify the discrepancies by stating that she did not seek medical treatment until *after* she had already served her discovery responses.[34]

Despite being aware of this inconsistency, Plaintiff has still not supplemented any discovery responses to correct this inconsistency or otherwise clarify the conflict. She has likewise failed to provide any medical records or information to substantiate her testimony that she sought and received medical treatment during the relevant time period, let alone any medical records connecting any treatment sought and received to IQ Data's credit reporting. While this argument raises significant concerns regarding Plaintiff's abuse of discovery, any testimony claiming that

---

[31] Dkt. 32 at p. 5.
[32] *See* Plaintiff's Disc. Resp., attached to Dkt. 25 as Exhibit A, at ROG. No. 8.
[33] *Id.*; *see also* Plaintiff's Dep., attached to Dkt. 25 as Exhibit C, at 46:09-24.
[34] *See* Plaintiff's Dep., attached to Dkt. 25 as Exhibit C, at 46:09-24.

Plaintiff sought medical treatment as a result of IQ Data's alleged conduct should be struck and given no weight pursuant to Rule 37 of the Federal Rules of Civil Procedure.

Assuming that Plaintiff actually sought medical treatment from June through August of 2022, this evidence still fails to satisfy Article III's standing requirement because it cannot be attributed to any of IQ Data's conduct. Plaintiff did not seek any medical treatment prior to filing suit. Indeed, by her own account, she did not seek any treatment until after the debt was removed from her credit report. Thus, any medical treatment sought by Plaintiff cannot be causally related to IQ Data's conduct.

E.   **Plaintiff does not have standing to seek injunctive relief under the TDCA because there is no "imminent" concrete injury.**

Plaintiff's Response alternatively argues that even if Plaintiff failed to establish that she suffered any actual damages, IQ Data would still not be entitled to summary judgment because Plaintiff has requested injunctive relief under the TDCA which does not require her to prove that she suffered actual damages.[35]

A material risk of future harm permits the plaintiff to sue to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial.[36] However, this only applies when a "forward-looking" remedy (*e.g.*, an injunction or declaration) would prevent the harm from occurring.[37]

While Plaintiff may have had standing to seek injunctive relief at the outset of this lawsuit, any such standing terminated after the deletion of Plaintiff's debt. The debt at issue was deleted from Plaintiff's credit report in April of 2022. As such, there are no "forward-looking" remedies that Plaintiff can seek as there are no future injuries at risk to prevent. Importantly, Plaintiff's

---

[35] Dkt. 32 at p. 6.
[36] *See Perez*, 45 F.4th at 827 (citing *TransUnion*, 141 S. Ct. at 2210) (quotations omitted).
[37] *Id*. (citing *TransUnion*, 141 S. Ct. at 2210; *see also City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019).

Response does not point to any imminent concrete harm to support her request for injunctive relief. Further, even as the debt is no longer being reported, Plaintiff remains obligated to satisfy the standing requirement at all stages of litigation.[38] Since there is no "imminent" concrete harm at issue to support a request for forward-looking relief, Plaintiff does not have standing to seek an injunction under the TDCA.

As there is no causal connection between the injuries Plaintiff alleges and IQ Data's conduct, Plaintiff lacks standing in this matter. Accordingly, IQ Data is entitled to summary judgment.

## PRAYER FOR RELIEF

Defendant I.Q. Data International Inc. prays that upon final hearing, the Court grant Defendant's Motion for Summary Judgment under Article III standing as to all of Plaintiff's claims and for all other and further relief to which it may be entitled at law or in equity.

Respectfully submitted,

**SERPE ANDREWS, PLLC**

By: /s/ Lee H. Staley
    Lee H. Staley
    Attorney-In-Charge
    State Bar No. 24027883
    Federal Bar No. 30072
    lstaley@serpeandrews.com
    Benjamin E. Hamel
    State Bar No. 24103198
    Federal Bar No. 3184927
    bhamel@serpeandrews.com
2929 Allen Parkway, Suite 1600
Houston, Texas 77019
713/452-4400
713/452-4499 fax

**ATTORNEYS FOR DEFENDANT**
**I.Q. DATA INTERNATIONAL, INC.**

---

[38] *See* Hollingsworth, 570 U.S. at 705.

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of January, 2023, a true and correct copy of the above was electronically filed with the court via CM/ECF system and notification of such filing has been sent to the following:

Marwan R. Daher
mdaher@sulaimanlaw.com
Mohammed O. Badwan
mbadwan@sulaimanlaw.com
Alexander Taylor
ataylor@sulaimanlaw.com
Sulaiman Law Group, Ltd.
2500 S. Highland Ave. Suite 200
Lombard, IL 60148
(630) 575-8181
***Attorneys for Plaintiff***

By: /s/ *Lee H. Staley*