UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DENYONNA N. REED | § | CIVIL ACTION |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| V. | § | COMPLAINT 5:22-cv-00068 |
| | § | |
| I.Q. DATA INTERNATIONAL, INC. | § | |
| | § | |
| *Defendant*. | § | |

**DEFENDANT I.Q. DATA INTERNATIONAL, INC.'S
MOTION TO COMPEL DISCOVERY AND MOTION FOR SANCTIONS**

Defendant I.Q. Data International, Inc. ("IQ Data") files this Motion to Compel Discovery and Motion for Sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Rules CV-16(d) and CV-26(a). In support thereof, IQ Data would respectfully show the Court as follows:

**I.
INTRODUCTION**

1.   Plaintiff Denyonna Reed ("Plaintiff") brought this action against IQ Data alleging violations of the Fair Debt Collection Practices Act ("FDCPA") under 15 U.S.C. § 1692 *et seq.*, and the Texas Debt Collection Act ("TDCA") under Tex. Fin. Code Ann. § 392 *et seq*. [#1]. Specifically, Plaintiff alleges that IQ Data violated the FDCPA §§ 1692e, 1692f, and TDCA § 392.304(8) when IQ Data reported a debt on Plaintiff's credit report that she was not legally obligated to pay [#1]. The debt at issue stems from an $894 account that was assigned to IQ Data by Icon Apartments ("Icon") in which Plaintiff was mistakenly named as a debtor on the account.

2.   Plaintiff recently survived IQ Data's Motion for Summary Judgment under Article III standing—which argued that Plaintiff had failed to establish that she sustained any concrete

injury as a result of IQ Data's alleged conduct sufficient to confer Article III's standing requirement—based on her deposition testimony that she was denied housing by two apartment complexes, the Lofts at Ventura ("Ventura") and at another unknown complex which has not been disclosed to IQ Data, due a debt being reported on her credit report by IQ Data. However, despite numerous requests, Plaintiff has not produced any documents establishing that she was denied housing by any apartment complex. As a result, IQ Data was forced to file this Motion to Compel.

3.     Although the September 9, 2022 discovery deadline has passed, there are *exceptional circumstances* warranting this Court's consideration of this Motion to Compel. Specifically, IQ Data recently discovered that Plaintiff apparently was **approved** for housing at Ventura (contrary to her deposition testimony). In other words, this Court may have concluded that Plaintiff sustained a concrete injury sufficient to confer Article III's standing requirement based on testimony that may have been false. Additionally, the fact that Plaintiff was approved for housing at Ventura suggests that she may not have been denied at another complex as she contends. Accordingly, *exceptional circumstances* exist warranting this Court's consideration of this Motion to Compel.

4.     Because there are *exceptional circumstances* warranting this Motion to Compel and IQ Data has been unable to obtain the requested information despite numerous good faith attempts to obtain the requested information, IQ Data respectfully requests this Court to enter an order pursuant to Rule 37 compelling Plaintiff to: (1) produce documents evidencing that Plaintiff was denied housing; (2) produce documents reflecting the approval of Plaintiff's application for housing at Ventura; (3) supplement Plaintiff's discovery responses by disclosing the name of any other apartment complex for which she contends that she applied for housing but was subsequently rejected/denied residency due to debt at issue being listed on her credit report; and (4) produce any

documents reflecting the approval or denial of any application Plaintiff made for housing at any apartment complex other than Ventura.

5. IQ Data also seeks appropriate sanctions including costs and reasonable attorney's fees under Rule 37 for Plaintiff's failure to timely disclose this information as Plaintiff was already put on notice by the Court that Plaintiff and/or Plaintiff's counsel had failed to comply with their discovery obligations under Rule 26(e)(1). [#38, p 12]. In the event Plaintiff cannot produce such documents because Plaintiff's testimony was false (which appears to be the case for at least one of the apartment complexes), IQ Data requests this Court enter additional sanctions against Plaintiff in the form of a dismissal with prejudice pursuant to Rule 37(b)(2).

## II.
## RELEVANT FACTUAL BACKGROUND

6. On January 26, 2022, Plaintiff brought this action against IQ Data alleging violations of the FDCPA under §§ 1692e, 1692f and the TDCA § 392.304(8). [#1].

7. On March 10, 2022, The Court issued an Advisory Order concerning the Court's expectations regarding the parties' conduct during discovery. [#11]. The Advisory Order provided that "[t]here will be no Rambo tactics or other forms of elementary school behavior. Simply put: Do not play games." [#11 at ¶ 2].

8. On June 7, 2022, the Court entered a Scheduling Order requiring the parties to complete discovery by September 9, 2022. [#17 at ¶ 5]. The Scheduling Order allowed the parties to conduct discovery beyond the discovery deadline by agreement, but stated that "there will be no intervention by the Court *except in exceptional circumstances*." [#17 at ¶ 5]. Likewise, Local Rule CV-16(d) provides in pertinent part that, "[a]bsent *exceptional circumstances*, no motions relating to discovery, including motions under Rules 26(c), 29, and 37, shall be filed after the expiration of the discovery." *See* Local Rule CV-16.

9. On August 1, 2022, IQ Data served Plaintiff with written discovery requests which included 10 interrogatories and 11 requests for production. On September 28, 2022, Plaintiff served her responses to IQ Data's written discovery requests. A copy of IQ Data's written discovery requests and Plaintiff's responses are attached hereto as **Exhibit A** pursuant to Local Rule CV-26(a).

10. On October 21, 2022, IQ Data deposed Plaintiff. *See Deposition of Plaintiff Denyonna Reed*, attached hereto as **Exhibit B**. During Plaintiff's deposition, she testified that she was denied housing by two apartment complexes due to the debt that IQ Data reported on her credit report:

> Q: [S]o you were looking for [a] new [apartment]?
> **A: Correct.**
> …
> Q: And did you ever fill out any applications at any of those places?
> **A: Yes.**
> Q: Gotcha. And did any of them ever say anything about, you know, hey, sorry, your credit. There's this issue here, so we can't rent you this apartment, anything like that?
> **A: Yes. I did get denied at two places[.]**
> …
> Q: So you had some applications get denied, right?
> **A: Yes.**
> Q: Okay. And no one specifically told you though that the reason that the application was getting denied was because you had this debt. You asked, hey, is it possible that a debt could do this? And they said, yes, that's possible. Is that fair?
> **A: No, sir.**
> Q: Okay.
> **A: So the complexes that I did apply at, I asked what was the reason for the denial, and they did tell me because of the old property that was on my credit report, that I owed a property.**

*See Plaintiff's Dep.* at 25:24-27:12. Importantly, one of the complexes that Plaintiff testified that she was denied housing at the Lofts at Ventura ("Ventura") and at a complex named "Park Place", but Plaintiff was unable to accurately remember the name:

> Q: Do you happen to recall the name of those two apartment complexes?

4

> **A:** **One is called The Vent[u]ra. It's called the L[ofts] at Vent[u]ra. It's here in San Antonio.[1]**
> **Q:** And what about the other one?
> **A:** **I want to say it's called The Park Place. I can't remember the last name of it. It's called Park Place – I'm sorry. This was like a year ago.**
> **Q:** No problem at all. Like I said, it's not a memory test. So Park Place something, right?
> **A:** **Something like that, yes, sir.**

*See Plaintiff's Dep.* at 29:21-30:06.

11. On November 17, 2022, IQ Data filed a Motion for Summary Judgment under Article III standing. [#25]. IQ Data's motion argued that Plaintiff failed to establish that she sustained any concrete injury as a result of IQ Data's alleged conduct sufficient to confer Article III's standing requirement. [#25].

12. On January 4, 2023, Plaintiff filed her Response to IQ Data's Motion for Summary Judgement under Article III standing ("Plaintiff's Response"). [#32]. Relevant here, Plaintiff's Response claimed that Plaintiff had sustained a concrete injury because:

> Plaintiff testified that she was denied housing twice as a result of [IQ Data's] erroneous credit reporting and lost $200 in housing application fees. (Pl. Exhibit D, Plaintiff's Deposition Transcript, 24:17-30:21; 42:22-43:14). Plaintiff further testified that since she was not able to secure new housing, she was forced to stay at her current apartment on a month-to-month basis, which cost her an additional $300 per month (the cost of a month-to-month lease as opposed to an annual lease). *Id.* Plaintiff also testified that the increased rent caused her to fall "extremely behind" on her bills. *Id.* at 48:4-49:2.

[#32, p. 5].

13. On January 13, 2023, IQ Data filed its Reply to Plaintiff's Response to IQ Data's Motion for Summary Judgment under Article III standing ("IQ Data's Reply"). [#34]. IQ Data's Reply argued, in relevant part, that Plaintiff lacked Article III standing despite her testimony that she was denied housing because such testimony was conclusory, unsupported by any documentary

---

[1] Plaintiff mistakenly referred to the Lofts at Ventura as the "Life at Ventera" during her deposition.

evidence, and Plaintiff's written discovery responses were "silent as to any allegations that she was denied housing." [#34, pp. 5-7]. IQ Data's Reply also noted that "Rule 26(e)(1) of the Federal Rules of Civil Procedure strictly requires Plaintiff to supplement her incomplete discovery responses." [#34, p. 6].

14. On February 3, 2023, IQ Data requested for Plaintiff to produce her housing applications and her denial letters showing that she was in fact denied housing. *See Counsel Correspondences*, attached hereto as **Exhibit C**, at p. 1. Specifically, IQ Data requested "[a]ny housing applications that were submitted by Plaintiff (including any denial letters for same) as well as any receipts evidencing any payments that she made as part of the application." *Id.* IQ Data reiterated that the allegation that Plaintiff was denied housing was not included in any of Plaintiff's written discovery responses nor had Plaintiff supplemented her discovery responses. *Id.* IQ Data's email further stated, "[p]lease comply with your ongoing duty to supplement and amend [Plaintiff's] responses as required by the discovery rules." *Id.*

15. On August 14, 2023, the Magistrate Judge issued a Report and Recommendation ("Report") recommending that the Court deny IQ Data's IQ Data's Motion for Summary Judgement under Article III standing. [#38]. The Magistrate Judge concluded that Plaintiff sustained a concrete injury sufficient to confer Article III standing based on her sworn deposition testimony that she was denied housing by two apartment complexes as a result of the debt being inaccurately reported on her credit report. [#38, pp. 10-13]. Relevant here, the Magistrate Judge also noted that Plaintiff had failed to comply with her discovery obligations under Rule 26(e)(1) of the Federal Rules of Civil Procedure:

> It is true that none of Reed's assertions regarding her financial injuries appear in Reed's Complaint or in Reed's discovery responses, and Reed has not supplemented her responses to address these alleged injuries as required by Rule 26(e)(1). (See Discovery Requests [#25-1], at 7 (asking Reed to produce all documents

6

> supporting any "actual damages" suffered as a result of I.Q. Data's alleged conduct).)

[#38, p 12]. As of this date, Plaintiff still has not supplemented her discovery responses or produced any documents evidencing that she was denied housing.

16. On September 7, 2023, this Court issued an Order adopting the Magistrate Judge's findings and denied IQ Data's Motion for Summary Judgment under Article III standing. [#40].

17. On October 25, 2023, counsel for IQ Data contacted Ventura (one of the apartment complexes that Plaintiff testified that she was denied housing at). *See Correspondence between IQ Data and The Lofts at Ventura*, attached hereto as **Exhibit D**; *see also Affidavit of Dylan Bass*, attached hereto as **Exhibit F**. Contrary to Plaintiff's deposition testimony, Ventura informed IQ Data's attorneys that Plaintiff applied for housing at Ventura on April 5, 2022, and was subsequently approved, but later withdrew her application on September 14, 2022. *Id.* at pp. 2-3. Importantly, Ventura's representative informed IQ Data's attorneys that Plaintiff was **not** denied housing at Ventura as she so testified. Below is the email exchange between IQ Data's attorney and Ventura's representative:

> **IQ Data:** Hi Ms. Brooks,
>
> Thank you for speaking with me today. As we discussed, our law firm represents I.Q. Data International, Inc. (a third-party debt collection agency) in a lawsuit that was filed by Denyonna Reed in which one of the allegations is that she was denied housing at the Lofts at Ventura due to an inquiry on her credit report.
>
> To confirm, Ms. Reed applied for housing at the Lofts at Ventura on April 5, 2022 and was subsequently approved, but later withdrew her application on September 14, 2022. Please confirm same and please also let me know if you are able to provide us with any documents showing that Ms. Reed was approved for housing at the Lofts at Ventura. This would include documents such as Ms. Reed's application for residency, her approval statement/letter, or any other materials showing that she was approved.

|  |  |
|---|---|
|  | Thank you in advance for helping us with this matter as your assistance is much appreciated. Please feel free to reach out to me if you have any questions. My cell is (***) ***-****. |
|  | Regards,<br>Dylan Bass |
| **Ventura:** | Good Afternoon, |
|  | The [above] information is correct. The only information I can give is the score card, in which shows that Ms. Reed was not denied housing with The Lofts at Ventura due to any criminal or credit/background check. The Lofts at Ventura is a LIHTC program and does require the entire file to go through processing with our compliance department to ensure the applicant meets all of the qualifications to be fully approved for the program. This process was not completed due to the applicant cancelling the application and/or not responding to our request to gather the information needed to further process to meet the LIHTC program qualification requirements. Please see the attached score card for Denyonna Reed. |
|  | Hope this helps. |
|  | Thanks, |
|  | Alisha Brooks |

*Id.* Additionally, the "score card" that was provided by Ventura's representative shows that Plaintiff was tentatively **approved** for housing:



See *The Lofts at Ventura's Score Card for Denyonna Reed*, attached hereto as **Exhibit E**.

8

18.     On October 25, 2023, counsel for IQ Data informed Plaintiff's attorney of this discovery and supplemented IQ Data's written discovery responses and produced copies of its correspondences with Ventura's representative. **Exhibit C**, at pp. 7-8.

19.     On October 26, 2023, counsel for IQ Data sent a follow-up email requesting for Plaintiff to "produce documents or other information demonstrating or explaining the basis for Ms. Reed's testimony that she was denied housing at the Lofts at Ventura." *Id.* at pp. 6-7.

20.     On October 31, 2023, Plaintiff's attorney informed counsel for IQ Data that he had not received a response from Plaintiff regarding IQ Data's recent discovery. *Id.* at p. 5. In other words, Plaintiff's attorney presumably has not been able to confirm that Plaintiff was, in fact, denied housing at Ventura or any other complex.

21.     As demonstrated above, Plaintiff testified under oath that she was denied housing at Ventura and at another complex due to the debt at issue being listed on credit report and this testimony allowed Plaintiff to survive IQ Data's Article III standing Motion for Summary Judgment. Despite numerous requests, however, Plaintiff has failed to produce any documents demonstrating that she was, in fact, denied housing. More importantly, there is now evidence that highly suggests that Plaintiff was **<u>approved</u>** for housing at one of the apartment complexes which she claims to have been denied. Further, because Plaintiff was unable to remember the name of this "other complex" during her deposition—and Plaintiff has not disclosed the name of such complex (or any other complex) via her written discovery responses—for which she contends she was denied housing at due to the debt at issue being listed on her credit report, IQ Data has been unable to investigate/verify the veracity of Plaintiff's assertions—that is, whether she was actually denied housing at this "other complex". While any documents indicating that Plaintiff was denied housing due to the debt at issue being listed on her credit report (*e.g.*, housing or residency denial statements/letters) should have been produced by Plaintiff at the outset of this case, there is a

plausible explanation for Plaintiff's failure to produce these documents: these documents do not exist because Plaintiff was approved for, rather than denied, housing, contrary to her testimony under oath.

22. As a result of Plaintiff's failure to produce documents establishing that she was denied housing, IQ Data was forced to file this Motion. While the discovery deadline has passed, this new evidence that Plaintiff was approved for housing at Ventura contrary to her deposition testimony constitutes *exceptional circumstances* warranting the Court's consideration of IQ Data's Motion to Compel. Additionally, because the Court may have concluded that Plaintiff sustained a concrete injury sufficient to confer Article III based on false testimony, this further establishes that *exceptional circumstances* exist. IQ Data respectfully requests this Court to compel Plaintiff to produce documents evidencing that she was denied housing during the relevant time period.

23. Accordingly, pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Rule CV-26(a), IQ Data requests this Court to enter an order compelling Plaintiff to: (1) produce documents evidencing that Plaintiff was denied housing; (2) produce documents reflecting the approval of Plaintiff's application for housing at Ventura; (3) supplement Plaintiff's discovery responses by disclosing the name of any other apartment complex for which she contends that she applied for housing but was subsequently rejected/denied residency due to debt at issue being listed on her credit report; and (4) produce any documents reflecting the approval or denial of any application Plaintiff made for housing at any apartment complex other than Ventura.

24. IQ Data also seeks appropriate sanctions including costs and reasonable attorney's fees under Rule 37 for Plaintiff's failure to timely disclose this information. In the event Plaintiff cannot produce such documents because Plaintiff's testimony was false, IQ Data requests this Court seeks additional sanctions against Plaintiff in the form of a dismissal with prejudice.

## III.
## ARGUMENT & AUTHORITIES

25. The purpose of discovery is in part to help avoid judicial surprise, narrow the parties' theories of liability and defense, and give all parties full knowledge of the facts so they can prepare for trial. *See Brown Badgett, Inc. v. Jennings*, 842 F.2d 899, 902 (6th Cir. 1988); *O2 Micro Int' v. Monolithic Power Sys.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006); *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce Fenner & Smith, Inc.*, 756 F.2d 230, 236 (2nd Cir. 1985).

26. Federal Rule of Civil Procedure 26(b)(1) provides the general standard governing the scope of discovery: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26. Rule 26 further provides that, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. "Relevant information [in discovery] encompasses 'any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.'" *See Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 469 (N.D. Tex. 2005) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). "[A] request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *Id.* at 470 (quoting *Sheldon v. Vermonty*, 204 F.R.D. 679, 689 (D. Kan. 2001)). The party objecting to discovery bears the burden of establishing the lack of relevance by demonstrating that the requested discovery either does not come within the broad scope of Rule 26 or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. *Id.* at 470–71 (quoting *Scott v. Leavenworth Unified Sch. Dist. No. 453*, 190 F.R.D. 583, 585 (D. Kan. 1999)).

27. Federal Rule of Civil Procedure 37 governs motions to compel discovery or disclosure. Fed. R. Civ. P. 37 ("[A] party seeking discovery may move for an order compelling an

11

answer, designation, production, or inspection."). Rule 37 allows such a motion when a party fails to answer an interrogatory under Federal Rule of Civil Procedure 33 or respond to a request for production under Federal Rule of Civil Procedure 34, provided such discovery requests are within the scope of Rule 26(b). *See* Fed. R. Civ. P. 37(a)(3). Under Rule 37, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). The moving party bears the burden to show that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. *Mascorro v. Westwood Inn LLC*, No. SA-23-CV-00505-JKP, 2023 WL 6429869, at *1 (W.D. Tex. Oct. 2, 2023) (citing *Exp. Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006)). Once the moving party establishes that the materials requested fall within the scope of discovery, the burden shifts to the nonmovant to show "how the requested discovery is overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Mascorro*, 2023 WL 6429869, at *1 citing (*Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 580 (N.D. Tex. 2018)).

28.    If a court grants a Rule 37 motion to compel, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movants reasonable expenses incurred in making the motion, including attorney's fees." *Bradfield v. Pillar Hotels and Resorts*, No. PE:18-CV-19-DC-DF, 2019 WL 13254078, at *1 (W.D. Tex. Mar. 8, 2019) (quoting Fed. R. Civ. P. 37(a)(5)(A)). "But the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the

12

opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A).

29. Here, Plaintiff has improperly objected to and/or failed to supplement the following discovery requests:

> **INTERROGATORY NO. 9:** If you contend that you have suffered from "damages" to your "good reputation as a consumer" as stated in paragraph 20 of your petition, describe the nature, duration, and severity of the damages to your reputation you claim to have suffered.
>
> **RESPONSE:** Plaintiff objects to this Request in its entirety on the basis that the information sought is are overly broad and unduly burdensome and thus disproportional to the needs of this case at this juncture. Subject to and without waving the forgoing, Plaintiff states that inaccurate reporting by Defendant negatively affected her credit score and good standing as a consumer, as all of her creditors and/or financial institutions can now easily view the poor trade-line listed on her credit report, thus ultimately impacting any opportunities for Plaintiff to obtain or update additional lines of credit. Plaintiff's investigation continues and Plaintiff reserves the right to supplement this response.
>
> **REQUEST FOR PRODUCTION NO. 5:** Produce documents which you allege support any actual damages which you have suffered as a result of Defendant's alleged conduct and for which you are seeking recovery in this Lawsuit.
>
> **RESPONSE:** Plaintiff refers Defendant to REED000001-000024. Plaintiff's investigation continues and Plaintiff reserves the right to supplement this response.
>
> **REQUEST FOR PRODUCTION NO. 9:** Produce documents evincing out-of-pocket damages, if any, which you allege you have suffered as a result of Defendant's conduct.
>
> **RESPONSE:** Plaintiff refers Defendant to REED000001-000024. Plaintiff's investigation continues and Plaintiff reserves the right to supplement this response.

*See* **Exhibit A** at pp. 5-7.

30. As demonstrated above, Plaintiff's responses to IQ Data's discovery requests are evasive and incomplete and "must be treated as a failure to disclose, answer, or respond." *See i.e.*, Fed. R. Civ. P. 37(a)(4). Plaintiff's written discovery responses and document production are entirely void of any evidence relating to Plaintiff's allegation that she was denied housing. Despite numerous requests by IQ Data—and the Court's acknowledgment that Plaintiff "**has not**

**supplemented her responses to address these alleged injuries as required by Rule 26(e)(1)**", *see* [#38, p. 12]—Plaintiff has not produced any documents demonstrating that she was, in fact, denied housing. Notably, Plaintiff used this testimony to avoid having her claims dismissed under Article III's standing requirement without proffering a single document to support this allegation. Additionally, it is undisputed that any housing denial statements/letters that Plaintiff received are highly relevant as this was Plaintiff's primary basis for establishing that she was Article III standing in this matter.

31. To the extent Plaintiff contends that IQ Data's Motion to Compel is untimely and that IQ Data should have sought court intervention prior to the September 9, 2022, discovery deadline, such an argument fails for multiple reasons. First, Plaintiff did not allege that she was denied housing until after the discovery deadline when she was deposed on October 21, 2022. Second, the September 9, 2022 discovery deadline did not relieve Plaintiff of her ongoing obligation to supplement discovery under Rule 26(e)(1). Third, IQ Data was not aware of any *exceptional circumstances* warranting the filing of a motion to compel until October 25, 2023, when it became aware that Plaintiff was approved for housing at Ventura. Unsurprisingly, federal courts in Texas have resoundingly and unanimously addressed issues when a party blatantly violates the discovery rules. *See e.g., Jones v. Dollar Tree Stores, Inc.*, No. CV H-19-4088, 2020 WL 7753719, at *2 (S.D. Tex. Dec. 10, 2020), report and recommendation adopted, No. CV H-19-4088, 2020 WL 7714709 (S.D. Tex. Dec. 29, 2020) ("Rule 37 gives teeth to the other discovery rules by permitting motions to compel and/or forbidding the use of documents and information not provided in response to a properly served discovery response. But Dollar Tree should not have had to file motions to get the basic information about Jones's case. That is not how the rules are intended to work."); *see also* Fed. R. Civ. P. 37(c).

32. In light of the new evidence discovered by IQ Data—that Plaintiff was more than likely **approved** for housing at Ventura—there are clearly *exceptional circumstances* warranting this Court to not only compel Plaintiff to produce documents evidencing that she was denied housing, but to enter sanctions against Plaintiff in the event her supplemental discovery responses do not provide a reasonable explanation for providing false testimony under oath and for using such testimony to avoid a dismissal of claims against IQ Data. The fact Plaintiff has not produced these highly relevant materials suggests that: (1) these documents may not exist because Plaintiff was not denied housing; and (2) Plaintiff's attorney did not make any attempt to verify her testimony that she was denied housing before representing same to the Court in Plaintiff's Response to IQ Data's Motion for Summary Judgment.

33. It is unclear as to why Plaintiff and/or Plaintiff's counsel have disregarded their ongoing duty to supplement discovery under Rule 26(e)(1) when the documents IQ Data seeks to compel are directly related to her damages and her testimony that was the primary basis for the Court's finding that Plaintiff has Article III standing in this matter. If Plaintiff was denied housing as she contends, this will be documented and can be easily verifiable by simply contacting the complex—as IQ Data did with Ventura—and requesting Plaintiff's complete file. Moreover, the fact that Plaintiff was approved at Ventura in apparent contradiction of her sworn deposition testimony further demonstrates that *exceptional circumstances* exist as Plaintiff may have also been approved for housing at other apartment complexes.

34. For the reasons stated above, IQ Data respectfully requests this Court to enter an order pursuant to Rule 37 compelling Plaintiff to: (1) produce documents evidencing that Plaintiff was denied housing; (2) produce documents reflecting the approval of Plaintiff's application for housing at Ventura; (3) supplement Plaintiff's discovery responses by disclosing the name of any other apartment complex for which she contends that she applied for housing but was subsequently

rejected/denied residency due to debt at issue being listed on her credit report; and (4) produce any documents reflecting the approval or denial of any application Plaintiff made for housing at any apartment complex other than Ventura.

35.     IQ Data also seeks appropriate sanctions including costs and reasonable attorney's fees under Rule 37 for Plaintiff's failure to timely disclose this information. In the event Plaintiff's supplemental discovery does not provide a reasonable explanation for her presumably false testimony, IQ Data requests this Court enter additional sanctions against Plaintiff in the form of a dismissal with prejudice pursuant to Rule 37(b)(2).

## IV.
## PRAYER

Defendant I.Q. Data International, Inc., respectfully requests that this Motion to Compel and Motion for Sanctions be granted in its entirety, that Plaintiff be compelled to properly respond and produce the relevant information and documents within fourteen (14) days of such order, that IQ Data be awarded reasonable attorney's fees and expenses associated with preparing this motion, and for such other and further relief, at law and in equity, to which it may show itself justly entitled.

Respectfully submitted,

**SERPE ANDREWS, PLLC**

By: /s/ Lee H. Staley
    Lee H. Staley
    Attorney-In-Charge
    State Bar No. 24027883
    Federal Bar No. 30072
    lstaley@serpeandrews.com
    Benjamin E. Hamel
    State Bar No. 24103198
    Federal Bar No. 3184927
    bhamel@serpeandrews.com
2929 Allen Parkway, Suite 1600
Houston, Texas 77019
713/452-4400
713/452-4499 fax

**ATTORNEYS FOR DEFENDANT**
**I.Q. DATA INTERNATIONAL, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of November, 2023, a true and correct copy of the above was electronically filed with the court via CM/ECF system and notification of such filing has been sent to the following:

Mohammed O. Badwan
mbadwan@sulaimanlaw.com
Marwan R. Daher
mdaher@sulaimanlaw.com
Alexander Taylor
ataylor@sulaimanlaw.com
Nayeem Mohammed
nmohammed@sulaimanlaw.com
SULAIMAN LAW GROUP, LTD.
2500 S. Highland Ave. Suite 200
Lombard, IL 60148
(630) 575-8181
*Attorneys for Plaintiff*

By: */s/ Lee H. Staley*

## CERTIFICATE OF CONFERENCE

I hereby certify that on October 26, 2023, I conferred in good faith conferred with Plaintiff's counsel regarding Plaintiff's failing to make the requested disclosures or discovery in an effort to obtain the discovery requested herein without court intervention. Plaintiff's counsel has refused to produce documents in response to IQ Data's request and thus, IQ Data therefore seeks court intervention.

By: /s/ *Lee H. Staley*